# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No.
The Cellular Telephone Assigned Call Number ) 20-1050M(NJ)
213-285-9911 )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A1. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 3146 and 3148 | violation of pretrial release conditions |

The application is based on these facts:
See attached affidavit.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Clinton Blauser, Deputy U.S. Marshal
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
\_\_\_\_\_telephone\_\_\_\_\_ *(specify reliable electronic means)*.

Date: 10/09/2020

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin     Nancy Joseph, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR SEARCH WARRANTS

I, Clinton Blauser, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephones (collectively, "Target Cell Phones"):

   (a) the cellular telephone assigned call number **213-285-9911** ("Target Cell Phone A"), whose service provider is T-Mobile ("Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey; and

   (b) the cellular telephone assigned call number **414-737-0240** ("Target Cell Phone B"), whose service provider is AT&T ("Service Provider"), a wireless telephone service provider headquartered in North Palm Beach, Florida.

The Target Cell Phones are described herein and in Attachments A1 and A2 (collectively, "Attachments A"), and the location information to be seized is described herein and in Attachment B.

2. On August 7, 2020, the Honorable William E. Duffin, United States Magistrate Judge for the Eastern District of Wisconsin, signed a warrant authorizing case agents to obtain location information for the cellular telephone assigned call number 414-204-9952—a phone used by Alejandro Castaneda, the target of this investigation—for 30 days in Case No. 20-MJ-169. That monitoring period expired on or about September 7, 2020.

3. On September 11, 2020, the Honorable Stephen C. Dries, United States Magistrate Judge for the Eastern District of Wisconsin, signed a warrant authorizing case agents

to obtain location information for the cellular telephone assigned call number 414-204-9952 for more 30 days in Case No. 20-MJ-169. On September 23, 2020, that call number was deactivated.

4. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of applications by the United States of America for orders pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phones.

5. I am employed as a Deputy with the United States Marshals Service (USMS) and have held that position for over nine years. Prior to that, I spent three years working for the Allen County Sheriff's Department in Allen County, Indiana, as a Police Officer and a Confinement Officer. As part of my duties in my current position, I conduct investigations to locate federal and state fugitives.

6. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that Alejandro Castaneda is in violation of his pretrial release conditions, in violation of Title 18, United States Code, Sections 3146 and 3148. Castaneda was charged with conspiracy to

distribute controlled substances in *United States v. Gomez, et al.*, Case No. 17-CR-113. He was arraigned on September 9, 2017. On September 22, 2017, the Court conducted a detention hearing and detained Castaneda pending trial. ECF No. 86. On April 22, 2019, the Court released the Castaneda with conditions. ECF No. 432. Castaneda pled guilty days later. ECF Nos. 435, 440. He was set to be sentenced on July 25, 2019, but later moved to adjourn sentencing. ECF Nos. 440, 531. Sentencing was later set for February 11, 2020, but the defendant did not appear. ECF No. 668, 680. An arrest warrant was issued for Castaneda on January 22, 2020.

8. In light of that procedural history, there is probable cause to believe that Castaneda is aware of these charges and has fled. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting Castaneda who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

9. The court has jurisdiction to issue the proposed warrants because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

10. The United States, including the United States Marshals Service, is conducting a criminal investigation of Alejandro Castaneda (DOB: 08/13/1989) regarding possible violations of pretrial release conditions, in violation of Title 18, United States Code, Sections 3146 and 3148.

11. On August 5, 2020, I interviewed a confidential source (CS), who is a close associate of Castaneda and communicates with Castaneda's family regularly. The CS has no known criminal history. According to the CS, Castaneda possibly fled to California to evade law enforcement. The CS explained to me that Castaneda contacted him/her during the month of July from the number 414-204-9952, and this was the only phone number that he/she had for Castaneda.

12. On August 5, 2020, the Drug Enforcement Administration served T-Mobile with an administrative subpoena for historical telephone toll records for 414-204-9952. On August 6, 2020, T-Mobile provided 30 days of records for 414-204-9952. According to the historical records, the information that the CS provided to me about the date and time that 414-204-9952 contacted the CS was accurate.

13. A further analysis showed that 414-204-9952 was communicating with 414-530-4191 approximately 56 times since July 17, 2020. According to law enforcement databases, 414-530-4191 is associated with Lindsay Garcia. I know Lindsay Garcia is the mother of Castaneda's children based on jail visitation records from Dodge County Jail and from a separate interview of another close associate of Castaneda.

14. On August 7, 2020, the Honorable William E. Duffin, United States Magistrate Judge for the Eastern District of Wisconsin, signed a warrant authorizing case agents to obtain location information for the cellular telephone assigned call number 414-204-9952 for 30 days in Case No. 20-MJ-169.

15. On August 14, 2020, T-Mobile began sending data to the U.S. Marshals Service. According to that location information, that cell phone was located in the greater Los Angeles

area. The accuracy of the location information ranged from 600 meters to 16,000 meters. For that reason, the U.S. Marshals Service obtained a warrant on August 31, 2020 in the Central District of California to utilize an electronic technique to attempt to locate that cell phone. Between August 31, 2020 and September 4, 2020, the U.S. Marshals Service deployed that electronic technique twice, but was unable to locate the device because the device was regularly moving.

16. That monitoring period expired on or about September 7, 2020. On September 11, 2020, the U.S. Marshal Service requested additional location information for 414-204-9952, so that they could continue their efforts to apprehend Castaneda, who remains a fugitive. On September 11, 2020, the Honorable Stephen C. Dries, United States Magistrate Judge for the Eastern District of Wisconsin, signed a warrant authorizing case agents to obtain location information for the cell phone number 414-204-9952 for 30 more days in Case No. 20-MJ-169. On September 19, 2020, that device stopped moving, and the call number was deactivated on September 23, 2020.

17. On September 21, 2020, members of the U.S. Marshals Service in Los Angeles, California interviewed the mother of Castaneda's child—Lindsay Garcia. Garcia provided the USMS with three phone numbers, which she said Castaneda used to communicate with her, 213-285-9911 ("Target Cell Phone A"), 414-737-0240 ("Target Cell Phone B"), and 414-507-9017. Garcia verified those phone numbers by showing text messages between Castaneda using those three numbers and Garcia's cell phone.

18. On September 30, 2020, case agents obtained historical telephone toll records for 213-285-9911 and 414-737-0240. According to T-Mobile, 213-285-9911 was still an active line as of the date the records were requested on September 28, 2020. According to AT&T, 414-737-0240 was still an active line as of the date the records were requested on September 28, 2020.

## TECHNICAL BACKGROUND

19. In my training and experience, I have learned that the Service Providers are companies that provide cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

20. Based on my training and experience, I know that the Service Providers can collect cell-site data on a prospective basis about the Target Cell Phones. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers, such as the Service Providers, typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

21. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

22. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Providers can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on the respective Service Provider's network or with such other reference points as may be reasonably available.

23. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can

be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

24. Based on my training and experience, I know that wireless providers, such as the Service Providers, typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers, such as the Service Providers, typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the cell phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

25. Based on the foregoing, I request that the Court issue the proposed warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

26. I further request that the Court direct the Service Providers to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

27. I also request that the Court direct the Service Providers to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of

interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Providers for reasonable expenses incurred in furnishing such facilities or assistance.

28. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice until 30 days after the collection authorized by the warrants has been completed. There is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrants, the proposed search warrants do not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrants authorize the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

29. Because the warrants will be served on the Service Providers, who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrants at any time in the day or night. I further request that the Court authorize execution of the warrants at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

## ATTACHMENT A1

## Property to Be Searched

1. Records and information associated with the cellular telephone assigned call number **213-285-9911** ("Target Cell Phone"), that is in the custody or control of T-Mobile ("Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.

2. The cellular telephone assigned call number **213-285-9911**.

## ATTACHMENT A2

**Property to Be Searched**

1. Records and information associated with the cellular telephone assigned call number **414-737-0240** ("Target Cell Phone"), that is in the custody or control of AT&T ("Service Provider"), a wireless telephone service provider headquartered in North Palm Beach, Florida.

2. The cellular telephone assigned call number **414-737-0240**.

# ATTACHMENT B

## Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

To the extent that the information described in Attachments A1 or A2 is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from September 11, 2020 to present.

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

   i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

   ii. Source and destination telephone numbers;

   iii. Date, time, and duration of communication; and

   iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT")].

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

   i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the

Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that will assist in arresting **Alejandro Castaneda** who has violated pretrial release conditions, in violation of Title 18, United States Code, Sections 3146 and 3148, is the subject of an arrest warrant issued on January 22, 2020, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.